DOROTHY BOYD PATRICK, formerly Dorothy Boyd Price, Executrix under the Last Will and Testament of Harlan B. Price, deceased,
Plaintiff,

*vs.*

DOROTHY BOYD PATRICK, formerly Dorothy Boyd Price, individually and as residuary legatee and devisee under the Will of the said Harlan B. Price, deceased, BANK of DELAWARE, a corporation of the State of Delaware, formerly Security Trust Company, Trustee under the Last Will and Testament of Arthur C. Price, deceased, GRAND LODGE of DELAWARE INDEPENDENT ORDER OF ODD FELLOWS, INC., a corporation of the State of Delaware, TRUSTEES OF THE FIRST AND CENTRAL PRESBYTERIAN CHURCH OF WILMINGTON, DELAWARE, INC., a religious corporation of the State of Delaware, and SESSION OF THE FIRST AND CENTRAL PRESBYTERIAN CHURCH, a constituent religious body of the First and Central Presbyterian Church,
Defendants.

*New Castle, December 11, 1964*

*Arthur W. Koffenberger, Jr.,* of Keith & Koffenberger, Wilmington, for plaintiff.

*Thomas M. Keith* and *Jay H. Conner* of Keith & Koffenberger, Wilmington, for defendant, Dorothy Boyd Patrick, formerly Dorothy Boyd Price, individually and as residuary legatee and devisee under will of said Harlan B. Price, deceased.

*John J. Morris, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for defendant, Bank of Delaware, trustee under will of Arthur C. Price.

*Thomas Herlihy, Jr.,* and *Thomas Herlihy, III,* Wilmington, for defendant, Grand Lodge of Delaware, I.O.O.F., Inc.

*Stephen Hamilton, Jr.,* of Hamilton & OD'onnell Wilmington, for defendants, trustees of the First and Central Presbyterian Church of Wilmington, Delaware, Inc. and Session of the First and Central Presbyterian Church.

SEITZ, Chancellor : █ The executrix of the will of Harlan B. Price ("Harlan") seeks instructions concerning the will of Arthur C. Price ("Arthur"). Harlan was Arthur's son. The executrix alleges that it is uncertain whether Harlan had, at his death, a transmissible future interest in 62½% of a testamentary trust created by Arthur's will. She avers that the Internal Revenue Service has tentatively taken the position that Harlan had such an interest and that its value should be included in his gross estate. Under these circumstances the executrix is entitled to instructions now concerning this aspect of Arthur's will.

All parties having a possible interest were joined as defendants. They filed answers and after the record was supplemented with a stipulation of facts the conflicting claimants filed motions for summary judgment and this is the decision thereon.

Harlan was born March 13, 1908. In 1936 he married Dorothy. His father, Arthur, executed his will on December 22, 1943 and died April 7, 1945 survived by his wife ("widow") and Harlan. Harlan died June 11, 1955 survived by his wife but no children. The delay in bringing this action is not explained.

Arthur's will, which was executed after Harlan's marriage, first left certain personal property and the house to his widow, if she sur-

vived him. If not, such property was to go to his son. He next made certain cash bequests to others and provided:

"* * * If any of the persons, other than my son Harlan, named in this Item 'Fourth' should predecease me, the bequest as provided above for such deceased shall be distributed to my said son. If, however, Harlan predeceases me then the amount or amounts he would have been paid if living shall be added to the rest, residue and remainder of my estate hereinafter provided for."

By Item Fifth Arthur created the residuary trust here involved. He first provided that 60% of the income was to be paid his widow "for the remainder of her life" and the remaining 40% was to be paid Harlan "during the lifetime of his mother". It was provided that if Harlan predeceased his mother all of the income would go to the widow for her life. It was then provided that upon the death of his widow the Trustee was to pay all the income to the son. Next the trustee was given a discretionary power to invade corpus for the benefit of the widow. A similar power was given with respect to Harlan, provided the widow gave her consent.

The testator's will then contains the controversial Items Sixth and Seventh, which I quote in relevant part:

"SIXTH:—After the decease of my wife, and as our son, shall attain the age of forty years, Trustee shall pay over to him outright and free of all trusts, an amount which shall be twenty-five per cent (25%) of the then principal amount of this Trust Estate.

"As he shall attain the age of forty-five years, Trustee shall pay over to him outright, and free of all trusts, one-half of the then remaining principal and upon his attaining the age of fifty years, Trustee shall pay him outright and free from trust all of the then remaining principal of this Trust Estate, and the Trust shall terminate.

"SEVENTH:—In the event my son should be deceased before attaining the age of fifty (my wife also being deceased)

and while there is any principal amount in this fund not yet distributable to him, I direct Trustee to make the following distribution of such amount:— [one-third to each of the other defendants] * * *."

The defendant Dorothy Boyd Patrick ("Dorothy") both individually and as residuary legatee and devisee under Harlan's will contends that 62½% of the trust estate created by Arthur's will became indefeasibly vested in Harlan when he reached age 45 and thus passed as part of his estate. The defendants Grand Lodge of Delaware, I.O.O.F., Trustees of the First and Central Presbyterian Church and Session of the First and Central Presbyterian Church ("other defendants") contend that under Arthur's will one of the conditions to Harlan's taking any transmissible interest in the corpus of the trust was that he survive his mother. Having failed to do so, they contend that no interest passed to Harlan's estate.

Thus, the basic issue is whether the will fairly construed reflects an intent that Harlan should take corpus only if he survived his mother.

The other defendants contend that whether Harlan's future interest was vested or contingent is of no moment here because, in any event, under the will Harlan was required to survive his mother in order to take any interest. Compare *Simes and Smith, The Law of Future Interests* (2nd ed.), § 575. Since he did not do so, they say his remainder interest was destroyed and all of the corpus of the trust passes to the other defendants upon the death of the widow. On the other hand, Dorothy argues that neither the language of the will nor the surrounding circumstances suggest that the testator intended survival to be an independent condition to the absolute vesting of the particular shares of the corpus as Harlan reached the stipulated ages.

I turn to the terms of the will. The language in Item Seventh reciting: "After the decease of my wife, and as our son, shall attain the age of forty years, Trustee shall pay over to him outright * * *" is ambiguous, despite other defendants' argument to the contrary. The same is true of other language in Item Seventh, i. e., "my wife also being deceased". One notes immediately that the language fails to

define explicitly the rights with respect to the corpus in the situation which evolved, viz., the son reaching forty with his mother still living. Clearly none of the trust corpus was to be distributed under this Item so long as the widow lived. Thus, he could not take the 25% of the corpus when he reached forty because his mother still lived. If Harlan did not obtain an indefeasible interest in the 25% when he reached forty it must be said that there is no explicit provision of the will which would operate to transfer such an interest to him at a later time even though he survived his mother. The same is true of the other provisions for further distributions to Harlan upon his reaching ages 45 and 50. While not conclusive, this does suggest that it would be more reasonable to infer that the testator intended the interest to vest irrevocably in Harlan upon his reaching the stipulated ages with the enjoyment merely postponed.

Is there a manifestation of a reason why the testator would have wanted his son to take corpus only in the event he survived his mother? The other defendants say that the testator's will shows that he was interested only in benefitting Harlan and not Harlan's widow. This, they say follows first from the provision by which the other defendants admittedly would have taken all the trust corpus had Harlan not lived to age forty. Next they say it arises from the provision that if Harlan predeceased his mother, his share of the income then became payable to the testator's widow rather than Harlan's widow. There is some weight to be given these points but I think they are somewhat blunted by the fact that Harlan was about 36 when his father made his will. So far as appears there was no basis to assume that the son would not reach age forty. Indeed, this seemed so likely, timewise, when Arthur executed his will that it renders the testamentary language that much more difficult to comprehend. Certainly it can reasonably be inferred that the testator visualized his widow and son both living beyond the son's fortieth birthday. Yet, the testamentary language employed leaves the intended effect in doubt.

Certain other problems which could have arisen under this will tend to help in arriving at a reasonable construction. Suppose both the widow and son had lived beyond the son's fiftieth birthday and then the son had predeceased the widow. There is no provision in the will

applicable to the disposition of the corpus in that situation if the other defendants are correct that the son's taking was conditioned upon his surviving his mother. I say this because Item Seventh only creates an interest in the other defendants in the event the son died before reaching fifty. Other problems of a similar nature can be imagined and they tend to militate against the contention that Harlan's survival of his mother was a prerequisite to his obtaining a transmissible interest.

The court could engage in a prolonged discussion of the applicability of various canons of construction. Several of them are applicable. Some tend to support one conclusion and some another. But in the final analysis the court seeks the testator's expressed intent and the canons are but aids to that end. Indeed, they often seem to be props employed to justify a conclusion drawn from a "reaction" to the entire will in the light of the surrounding circumstances. Whether such a judgment arises from something akin to the exercise of a discretion, I need not decide. Compare *Simes and Smith, The Law of Future Interests, (2nd ed.)*, § 576.

The court's reaction to the will in its setting is that the testator did not intend Harlan's survival of his mother to be a condition to his taking a transmissible interest. The only real basis here for suggesting that Harlan's survival was such a condition arises from the provision in Item Seventh in favor of the other defendants. While this factor is entitled to consideration I conclude that its effect is outweighed by other factors. I refer specifically to the obvious gaps in the will if the other defendants' requested construction were to be adopted. Moreover, the provision requiring Harlan to reach certain stipulated ages was specific, whereas the finding of survivancy of his mother as an additional condition would have to be implied. One is somewhat less likely to imply a condition where it appears that the testator showed that he knew how to employ terms of express condition. Furthermore, assuming that Harlan's interest was vested, the court would be more reluctant to assume that the testator intended it to divest for the benefit of a charity than for some other natural object of his bounty.

I therefore conclude under all the circumstances that Arthur's will did not require Harlan to survive his mother before taking an

unconditional transmissible interest in the appropriate portions of the trust corpus. It follows that this interest passed to his estate and must be treated accordingly. Dorothy's motion for summary judgment will be granted and that of other defendants denied.

Present order on notice.[1]

1. After this opinion was filed the parties stipulated that an issue concerning the passing of the trust corpus by intestacy should be raised. The appropriate parties were added and then all parties in interest stipulated that the issue of intestacy was waived as to all the trust corpus. The court then agreed to and did instruct the trustee with respect to the entire corpus, *viz.*, two-thirds to Harlan's estate and one-third divided among the defendant charities.